Plasteel Products Corporation, Petitioner *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Robert L. Smith, Respondents.

Argued September 16, 1977, before President Judge Bowman and Judges Mencer and Blatt, sitting as a panel of three.

*James R. Miller,* with him *Noble R. Zuschlag,* and *Dickie, McCamey & Chilcote,* for petitioner.

*Benjamin L. Costello,* with him *Kenneth J. Yablonski,* and *James N. Diefenderfer,* for respondents.

OPINION BY JUDGE MENCER, November 17, 1977:

The difficult question presented by this appeal from an order of the Workmen's Compensation Ap-

peal Board (Board) concerns the meaning of the term "injury" in occupational disease cases.

After 32 years of work as an underground coal miner, Robert L. Smith was employed by Plasteel Products Corporation (Plasteel) as a general maintenance man, electrician helper, and batch mixer. During his 11 years of service for Plasteel, Smith was regularly required to operate a machine which, through vibrations, sifted sand from mica. The operation generated moderately thick dust, the exact composition of which was unknown to Smith. The dust would remain in the enclosed building where Smith worked.

In July 1974, Smith felt compelled to leave his employment at Plasteel for reasons of health. In November of that year, he applied for benefits under the occupational disease provisions of The Pennsylvania Workmen's Compensation Act (Compensation Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §1 et seq. During evidentiary hearings before a referee, it became apparent that, at the time he was employed by Plasteel, Smith was already suffering from a pulmonary condition occasioned by his exposure to coal dust in the underground mines, by inactive pulmonary tuberculosis, and by pulmonary emphysema. No evidence indicated that any disease was generated by conditions at Plasteel. However, medical testimony indicated that Smith's lungs were subjected to further injury at Plasteel by exposure to noxious dust, that the dust aggravated Smith's preexisting diseases, that the aggravated diseases were causally related to Smith's occupation, and that the incidence of the aggravated diseases was substantially greater in his occupation than in the general population.

After the hearings, the referee issued a decision which essentially found the above-mentioned facts

and which concluded that Smith had met the statutory burdens of proving disability due to injury. The referee's award of benefits was appealed by Plasteel to the Board. Observing that aggravation of a pre-existing disease is included within the definition of injury, the Board affirmed the award. Plasteel's subsequent appeal to this Court questions the Board's conclusion of law regarding the definition of injury.

Section 301(c) of the Compensation Act, 77 P.S. §411, provides, in pertinent parts:

> (1) *The terms 'injury' and 'personal injury,'* as used in this act, *shall be construed to mean an injury to an employe, regardless of his previous physical condition,* arising in the course of his employment and related thereto, *and such disease or infection as naturally results from the injury or is aggravated, reactivated or accelerated by the injury. . . .*

> (2) *The terms 'injury,' 'personal injury,'* and *'injury arising in the course of his employment,'* as used in this act, *shall include,* unless the context clearly requires otherwise, *occupational disease as defined in section 108 of this act. . . .* (Emphasis added.)

Thus, while it is clear that the term "injury" includes occupational diseases as defined in Section 108,[1] it is not clear whether an occupational disease type of harm which does not rise to the level of an independent disease is also included in the term. If the Legislature intended to include such harm, a disease aggravated by the harm must itself be construed to be an injury within the meaning of Section 301(c). Therefore, even though Smith does not suffer from a disease, the *occurrence* of which can at least in part be

---

[1] Added by the Act of October 17, 1972, P.L. 930, §1, 77 P.S. §27.1. *See generally Fruehauf Corp. v. Workmen's Compensation Appeal Board,* 31 Pa. Commonwealth Ct. 341, 376 A.2d 277 (1977).

attributed to conditions at Plasteel,[2] if the regular exposure to noxious dust at Plasteel over an 11-year period constituted a pulmonary injury to Smith, his resulting disability will be within the purview of the Compensation Act.

We conclude that the term "injury," when used in an occupational disease context, was intended to include occupation-related harm which does not amount to a separate occupational disease. Initially, we note that Section 301(c)(2) does not preclude such a construction. Further, we note our obligation to liberally construe the Compensation Act, *Millcraft, supra* note 2; *ISC, supra* note 2, so that its humanitarian purpose of protecting workmen is realized. *See Workmen's Compensation Appeal Board v. Overmyer Mold Co.,* Pa. , 374 A.2d 689 (1977).

However, even under liberal construction, not all harm can be construed to be an injury in the occupational disease sense. Rather, we conclude that, by specifically including occupational diseases as defined in Section 108, the Legislature exhibited an intention to include within the term "injury" only such harm as approximated the defined diseases. In this regard, we note what we discern to be two elements common to all defined diseases: first, a claimant is exposed to the disease by reason of his employment; second, the disease is occupational in nature.[3] Therefore, a claimant who does not suffer from an occupational disease, the occurrence of which can at least in part be attributed to the employer, may nevertheless demon-

---

[2] *See, e.g., Millcraft Corp. v. Workmen's Compensation Appeal Board,* 31 Pa. Commonwealth Ct. 322, 376 A.2d 283 (1977); *Industrial Services Contracting, Inc. v. Wilson,* 28 Pa. Commonwealth Ct. 83, 367 A.2d 377 (1977) (hereinafter ISC).

[3] *See* Section 108 of the Compensation Act; *cf.* Section 108 of The Pennsylvania Occupational Disease Act (Disease Act), Act of June 21, 1939, P.L. 566, *as amended,* 77 P.S. §1208 (materially similar provisions in parallel act). *See also Fruehauf, supra* note 1.

strate that he sustained a disease-like injury during his employment by proving that he was exposed to harm by reason of his employment and that the harm was occupational in nature.

We hold that Smith has demonstrated that he was exposed to harm by reason of his employment or, stated differently, that the harm was a hazard of his employment and that he was exposed to it.[4] We have recently held that a materially identical requirement could be satisfied by a reasonable identification and description of the causative factors, by a demonstration that those factors were significantly present in the claimant's employment, and by a showing that the claimant was exposed to the significant presence. *Fruehauf, supra* note 1; *see Millcraft, supra* note 2. In the instant case, medical testimony established dust at Plasteel as the factor causing pulmonary harm. The particular dust to which Smith was exposed was generally described by him as arising from the mica-shifting process. In lieu of a statutory requirement of greater specificity,[5] we cannot say this description was unreasonable or insufficient. *See Millcraft, supra* note 2; *Fruehauf, supra* note 1. Other testimony indicated that the moderately thick dust engendered by the sifting process remained in the air of the enclosed building where Smith worked for 11 years. Thus, he was exposed to a presence significant in both time and amount. Because Smith has reasonably described the causative factors, shown that such factors were significantly present in his employment, and demonstrated that he was exposed to the significant presence, he

[4] *See Fruehauf, supra* note 1, at 342, 376 A.2d at 280; Section 108(n) of the Compensation Act; *cf. Scott v. United States Steel Corp.*, 203 Pa. Superior Ct. 459, 201 A.2d 243 (1964) (construing similar language in Section 108(n) of the Disease Act, added by the Act of February 28, 1956, P.L. [1955] 1095, §1, 77 P.S. §1208(n)).

[5] *See Fruehauf, supra*, note 1, at 345 n. 2, 347 n. 6, 376 A.2d at 279 n. 2, 280 n. 6.

has established the first element of disease-like injury.

We further hold that Smith has demonstrated that the harm he sustained was occupational in nature. We have recently held that where the occupational aspect of a disease is not already widely accepted, it may be established by proof that a disease is causally related to an industry or occupation and that the incidence of the disease is substantially greater in the industry or occupation than in the general population. *Fruehauf, supra* note 1; *see* Section 108(n) of the Compensation Act. Here, medical testimony established that Smith's aggravated diseases were causally related to his occupation and were substantially more prevalent in his occupation than in the general population. This medical evidence is competent, *see Imperial Food Products v. Tomarelli*, 28 Pa. Commonwealth Ct. 150, 367 A.2d 732 (1977), and is sufficient to establish that the disease-like harm which befell Smith was occupational in nature.

Smith has demonstrated that he suffered harm within the meaning of the term "injury." We therefore affirm the Board.

### ORDER

AND Now, this 17th day of November, 1977, the appeal of Plasteel Products Corporation is hereby dismissed, and the order of the Workmen's Compensation Appeal Board, dated October 14, 1976, is affirmed. Accordingly, it is ordered that judgment be entered in favor of Robert L. Smith and against Plasteel Products Corporation and American National Fire Insurance Company, in the amount of $106 per week, beginning February 16, 1975 and continuing until such time as disability changes in nature or extent or ceases and terminates, together with interest at the rate of 10 percent per annum on deferred payments of com-

pensation from the date due to the date paid, all within the terms and limits of The Pennsylvania Workmen's Compensation Act.

In addition, Plasteel Products Corporation and American National Fire Insurance Company are directed to pay the following reasonable cost: Dr. Karl V. Hohman, $125.