Crucible Steel Corp., Petitioner *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Robert Gilson, Respondents.

Argued May 7, 1980, before Judges WILKINSON, JR., CRAIG and WILLIAMS, JR., sitting as a panel of three.

Roy F. Walters, Jr., Fried, Kane, Walters & Zuschlag, for petitioner.

William R. Caroselli, with him Edwin H. Beachler, McArdle, Caroselli, Spagnolli & Beachler, for respondent.

OPINION BY JUDGE WILKINSON, JR., June 11, 1980:

This appeal is brought by Crucible Steel Corporation (petitioner) from an order of the Workmen's Compensation Appeal Board (Board) awarding total disability benefits to claimant under the provisions of The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §1 et seq.

Claimant had been employed by petitioner for approximately 39 years as a laborer and crane operator when, on December 11, 1976 at the age of 60, he was forced to retire due to breathing difficulties. Claimant testified in detail about the dusty conditions prevailing in his place of employment.

On November 15, 1976, claimant consulted a physician who subsequently testified on his behalf before the referee. The doctor concluded in a report prepared that day that the claimant "has very significant pulmonary impairment and in my opinion should not be permitted to return to his job; indeed, I repeat, it is amazing that he has been able to continue at work this long."[1] Petitioner's medical witness examined claimant on December 29, 1976, on the basis of which he diagnosed a "mild restrictive and a moderately severe obstructive ventilatory pattern." Because of fear on the part of both doctors that some form of cancer might be present an open-lung biopsy was per-

---

[1] Claimant testified he was forced to retire because "I just couldn't navigate anymore." He stated he continued to work despite a warning from the doctor in order "to finish the year out, on the payroll year."

formed in February, 1977. Cancer was ruled out in the pathology report which stated the claimant was suffering from "chronic interstitial pneumonia with lymphoid follicles, chronic pleuritis and pleural fibrosis."

The Board expressly affirmed the referee's award on the authority of this Court's opinion in *Plasteel Products Corp. v. Workmen's Compensation Appeal Board*, 32 Pa. Commonwealth Ct. 405, 379 A.2d 908 (1977). We agree that *Plasteel* is controlling and compels an affirmance of the award.

This Court recognized in *Plasteel* the proposition that an occupational disease-type harm may be compensable where a claimant demonstrates the harm was a hazard of his employment to which he was exposed and that the harm was occupational in nature. Judge MENCER wrote in the opinion for the Court, "the term 'injury', when used in an occupational disease context, was intended to include occupation-related harm which does not amount to a separate occupational disease." *Id.* at 409, 379 A.2d at 910. However, not all harm can be equated with the term injury, "only such harm as approximate[s] the defined diseases." *Id.* at 409, 379 A.2d at 910.

Two basic factual elements must be established by a claimant to bring himself within the framework of *Plasteel.* First is the necessity to demonstrate exposure to employment-related harm, which may be "satisfied by a reasonable indentification and description of the causative factors, by a demonstration that those factors were significantly present in the claimant's employment, and by a showing that the claimant was exposed to the significant presence." *Id.* at 410, 379 A.2d at 910.

The causative factors were amply described by claimant's medical witness:

> Q. Doctor, do you have an opinion with reasonable degree of medical certainty whether

or not [claimant's] total and cumulative exposure to the occupational dust, which he described to you, aggravated his chronic interstitial pneumonia and chronic pleuritis and fibrosis?

A. Yes . . . it certainly did have a very definitely aggravating effect.

Claimant testified at length about the dusty conditions in his work area and his exposure to dust in the open cab of the crane.[2]

The second element of proof required is a showing that the harm sustained is occupational in nature. The proof required is analogous to that required under Section 108(n) of the Act, 77 P.S. §27.1(n), "where the occupational aspect of a disease is not already widely accepted, it may be established by proof that a disease is causally related to an industry or occupation and that the incidence of the disease is substantially greater in the industry or occupation than in the general population." *Id.* at 411, 379 A.2d at 911. Here, as in *Plasteel,* medical evidence established the claimant's *aggravated diseases* were causally related to his work and were substantially more prevalent in that occupation than in the general population. Such medical evidence is substantial and competent to establish that the disease-like harm which disabled claimant was occupational in nature.

Petitioner is not so much at odds with the foregoing anlaysis and interpretation of the *Plasteel* case; instead, it is argued the medical evidence of a causal link between claimant's exposure to an occupational hazard and his disability was not sufficiently direct

---

[2] Since the early years with petitioner, claimant had worked as a crane operator serving various operations in a steel mill. Claimant described the different processes and how they contributed to the dusty atmosphere. He also indicated he frequently had to use an air hose to blow accumulated dust off the crane's controls.

to satisfy this Court's interpretation of the requirements of Section 301(c)(2) of the Act, 77 P.S. §411(2) in *Consolidation Coal Co. v. Workmen's Compensation Appeal Board,* 37 Pa. Commonwealth Ct. 412, 391 A.2d 14 (1978).

The referee in *Consolidation Coal* made an award of benefits based on a finding that an occupational disease had "contributed to" claimant's decedent's death. In reversing the award, this Court focused attention on the language of Section 301(c)(2), "whenever occupational disease is the basis for compensation, for disability or death resulting from such disease." Thus it must be shown claimant's disability, "resulted from" exposure to an occupational harm, or language of similar import. In the case now before us the referee made the following finding of fact:

13. Your Referee, based on the aforementioned Findings of Fact, believes and, accordingly, finds that the claimant suffered from pre-existing pulmonary diseases[3] which were aggravated by his exposure to hazardous noxious dusts during his continuing employment and *as a result of said aggravation became totally disabled* on December 12, 1976. (Emphasis added.)

Since the quoted finding clearly satisfies the requirements of Section 301(c)(2) the only remaining question is whether substantial evidence supports that finding. Petitioner points to the following exchange between claimant's attorney and his medical witness during deposition as significant:

Q Doctor, do you have an opinion whether or not . . . this exposure and aggravation of this condition was a substantial contributing factor in the total disability you described. . . .

---

[3] The medical witnesses were in agreement that the claimant's pulmonary diseases were idiopathic, meaning the initial cause was not known.

A   I would say yes.

As a threshold matter, it should be pointed out that the sufficiency for purposes of Section 301(c)(2) of causation expressed in terms like "substantial contributing factor" has not yet been decided by this Court.[4] Most recently, in *Manuel v. Workmen's Compensation Appeal Board*, 50 Pa. Commonwealth Ct. 279, 412 A.2d 912 (1980) this Court found inadequate a referee's finding that lead poisoning "contributed to and accelerated" claimant's decedent's death.

The situation here is of course different since the referee's finding of fact number 13 is fully compatible with the requirement of *Consolidation Coal*. Testimony that establishes a disease process as a "substantial contributing factor" in claimant's disability does not logically preclude a referee from finding that the disability "resulted from" such cause, and indeed the medical as well as lay testimony in this record taken as a whole supports the referee's finding. This is not a situation like *Consolidation Coal* where an employee suffering from an occupational disease dies as a result of the more immediate effects of a life-threatening condition such as cancer or heart disease. In this case no independent supervening cause of disability is present; claimant suffers from pre-existing pulmonary disease the aggravation of which is disabling.

---

[4] Judge BLATT in the opinion for the Court in *Consolidation Coal* recognized an earlier decision of this Court, *Workmen's Compensation Appeal Board v. Commonwealth*, 19 Pa. Commonwealth Ct. 492, 338 A.2d 760 (1975), in which an award based on a finding that an occupational disease was a "significant contributory factor" in decedent's death was affirmed. The Section 301(c)(2) issue addressed by Judge BLATT in *Consolidation Coal* and by our Court in the instant case was not addressed in the earlier decision. Judge BLATT expressed no opinion on the sufficiency of such language nor do we here today in light of the clear adequacy of the referee's finding on causation.

Accordingly, we will enter the following

ORDER

AND NOW, June 11, 1980, the order of the Workmen's Compensation Appeal Board at Docket No. A-76470, dated July 12, 1979 is hereby affirmed and it is ordered that judgment be entered in favor of claimant, Robert Gilson and against petitioner, Crucible Steel Corporation, self-insured, in the amount of $187.00 per week commencing on December 12, 1976 and to continue into the future all in accordance with the provisions of The Pennsylvania Workmen's Compensation Act.

Petitioner, self-insured, is directed to take subrogation against the aforementioned award in the total amount of $3,095.69 being the amount of sick and accident benefits paid by petitioner. Petitioner is further directed to reimburse claimant's counsel for costs in the total amount of $309.20. Attorney fees in the amount of $4,862.00, as agreed upon between claimant and his counsel, are approved and petitioner, self-insured, is directed to deduct said amount from deferred compensation due the claimant. All deferred compensation payments shall bear interest at the rate of 10 percent per annum.