## Butler v. Negley House, Inc.

*Samuel J. Goldstein,* for plaintiff.
*Stephen Spolar,* for defendant.

WETTICK, *J.,* February 10, 1981—In her two count complaint, plaintiff seeks damages from her employer for refusing to allow her to resume her employment for approximately one year following a period of disability from an occupational injury. In her assumpsit count, plaintiff alleges that defendant's refusal to allow her to resume her employment breached the January 30, 1979 collective bargaining agreement between the union of which she was a member and defendant. Her trespass count is based on allegations that defendant refused to rehire her in retaliation for filing a workmen's compensation claim. Presently before this court are defendant's preliminary objections in which it contends that this court is without jurisdiction to consider either count of plaintiff's complaint and also that each count of this complaint fails to state a cause of action.

## I.

In her assumpsit count, plaintiff bases her right to return to employment solely on the January 30, 1979 collective bargaining agreement between her union and defendant. No provision within this agreement authorizes a union member to enforce the agreement. Instead, Article XV of the agreement establishes a grievance procedure in which the union and defendant are the only participants as the exclusive method of resolving all grievances. In this article, grievances are defined as "any and all disputes or complaints arising between the parties hereto which involve the interpretation, appli-

cation, performance, termination or any alleged breach of this Agreement." Thus if plaintiff has a right to return to employment under the January 30, 1979 collective bargaining agreement, defendant's refusal would constitute a breach of the agreement and would therefore be subject to the grievance procedure. Consequently, this action is governed by Falsetti v. Local Union No. 2026, United Mine Workers of America, 400 Pa. 145, 161 A. 2d 882 (1960), which bars individual union members from instituting court actions based upon a collective bargaining agreement that provides for disputes to be resolved through a grievance procedure.

Plaintiff seeks to avoid Falsetti on two grounds. First, she contends that the question of her right to resume employment is not covered by the grievance procedure. We reject this contention because her claim is based on the collective bargaining agreement and the grievance procedure covers any alleged breach of this agreement. Second, she contends that court action is permissible because her union refused to file a grievance on her behalf. But as the court in Falsetti recognized, a union has a duty to represent fairly its members and if the union has arbitrarily refused to process a grievance in breach of its fiduciary duty, the employe's remedy is a suit against the union for breach of its obligations—not a suit against the employer.

## II.

### A.

Plaintiff's trespass count rests on allegations that defendant refused to rehire her for one year in retaliation for filing a workmen's compensation claim. Defendant, citing Krispy Kreme Doughnut Corp., 245 NLRB No. 135, 102 LRRM 1492 (1979)

(where the National Labor Relations Board (NLRB) held that an employer violates section 8(a)(1) of the National Labor Relations Act (NLRA) by penalizing an employe for pursuing a workmen's compensation claim), contends that any claim that an employe was penalized for pursuing a workmen's compensation claim may be filed with the NLRB. Thus, according to defendant, the state courts are preempted by the NLRA from considering this claim under the San Diego Building Trades Council v. Garmon, 359 U.S. 236 (1959) and Sears, Roebuck & Co. v. San Diego County District Council of Carpenters, 436 U.S. 180 (1978) line of cases, which have barred state courts from considering various claims based on allegedly wrongful activity that would constitute an unfair labor practice under section 8 of the NLRA.

In the present case, there is no claim that plaintiff was acting on behalf of or as a representative of any other employe in pursuing her workmen's compensation claim. In Krispy Kreme Doughnut Corp. v. NLRB, 635 F. 2d 304 (4 Cir. 1980, the Court of Appeals for the Fourth Circuit, reversing the NLRB opinion on which defendant relies, held that the NLRA does not protect an employe from a retaliatory firing for filing a compensation claim if this claim is filed solely to benefit the employe's own interests. The rationale for this decision is that the NLRA protects only "concerted activity" and that an employe's filing a workmen's compensation claim to further his or her own interests does not constitute a concerted activity within the meaning of the NLRA. While we recognize that in Krispy Kreme the employe was not covered by a collective bargaining agreement, the Krispy Kreme rationale is equally applicable to the present case in which the employe is covered by a collective bargaining

agreement because plaintiff in her trespass count is not claiming that she was punished for attempting to enforce any rights provided by the collective bargaining agreement. Thus, because no Federal courts have accepted the NLRB's position that an employer who penalizes an employe for filing a workmen's compensation claim violates section 8(a)(1) of the NLRA and because this position is of questionable validity for the reasons set forth in the Fourth Circuit's Krispy Kreme opinion, we reject defendant's contention that the state courts are preempted by the NLRA from considering a damage claim for retaliatory action taken against an employe for filing a workmen's compensation claim.[1]

## B.

We next consider defendant's preliminary objections in the nature of a demurrer to the trespass count of plaintiff's complaint. Defendant contends that state law provides no cause of action to an employe against whom retaliatory action is taken for filing a workmen's compensation claim because the Workmen's Compensation Act of June 2, 1915, P.L 736, 77 P.S. §1 et seq., contains no provisions protecting an employe from retaliatory action and the law in Pennsylvania is settled that absent a

---

1. Since an employer's retaliatory action does not appear to be prohibited by section 8 of the NLRA, we need not consider whether the state interest in the employe's claim would be sufficiently significant to permit a separate state court remedy. See, e.g., Farmer v. United Brotherhood of Carpenters & Joiners of America, Local 25, 430 U.S. 290 (1977), which permitted a union member to bring a state court action against the union and its officers for intentional infliction of emotional distress even though an aspect of this claim involved conduct arguably barred by section 8 of the NLRA.

statutory or contractual provision to the contrary, an employer may terminate an employe for any reason. In support of this contention, defendant relies on Geary v. Unites States Steel Corporation, 456 Pa. 171, 319 A. 2d 174 (1974), in which the Supreme Court held that an employe discharged in retaliation for calling to his supervisors' attention the fact that a product which his employer manufactured was defective and dangerous has no cause of action against his employer for wrongful discharge.

But Geary is not necessarily controlling because the Geary court explicitly limited the decision's applicability to a discharge that does not violate a clear mandate of public policy[2] at 456 Pa. 184, 185, 319 A. 2d 180:

"It may be granted that there are areas of an employee's life in which his employer has no legitimate interest. An intrusion into one of these areas by virtue of the employer's power of discharge might plausibly give rise to a cause of action, particularly where some recognized facet of public policy is threatened. The notion that substantive due process elevates an employer's privilege of hiring and discharging his employees to an absolute constitutional right has long since been discredited. But this case does not require us to define in com-

2. Also at footnote 16 of the Geary decision, the court discussed a California decision which recognized on public policy grounds a cause of action in an employe dismissed for his refusal to commit perjury and an Indiana decision which reached a similar result in the case of an employe discharged for filing a claim under the Indiana Workmen's Compensation statute. In its discussion, the court stated that "It is not necessary to reject the rationale of these decisions in order to defend the result we reach here. In each case where a cause of action was found, the mandates of public policy were clear and compelling; that cannot be said of the instant case."

prehensive fashion the perimeters of this privilege, and we decline to do so. We hold only that where . . . no clear mandate of public policy is violated . . . [by terminating an at will employment relationship], an employee at will has no right of action against his employer for wrongful discharge."

This public policy limitation on the employer's right to terminate an employe which Geary suggested was explicitly recognized by our appellate courts in Reuther v. Fowler & Williams, Inc., 255 Pa. Superior Ct. 28, 386 A. 2d 119 (1978). In this case, an employe sued a former employer in trespass, claiming that he was discharged in retaliation for having missed work to serve on jury duty. The Superior Court held that the employe could recover in trespass if this were the reason for his discharge at 225 Pa. Superior Ct. 32-22, 386 A. 2d 120-121:

"The broad dictum of Geary v. United States Steel Corp., supra, and the reasoning of Nees v. Hock, supra, lead us to conclude that the law of this Commonwealth recognizes a cause of action for damages resulting when an employee is discharged for having performed his obligation of jury service. . . . In our view, the necessity of having citizens freely available for jury service is just the sort of 'recognized facet of public policy' alluded to by our Supreme Court in Geary v. United States Steel Corp., supra; an employer's intrusion into [this] area by virtue of [his] power of discharge' should 'give rise to a cause of action.'" Also see Yaindl v. Ingersoll-Rand Company Standard Pump-Aldrich Division, 281 Pa. Superior Ct. 560, 422 A. 2d 611 (1980).

The Workmen's Compensation Act is humanitarian legislation which should be broadly construed to protect the employe: Workmen's Compensation

Appeal Board v. Overmyer Mold Company, 473 Pa. 369, 374 A. 2d 689 (1977); Plasteel Products Corp. v. Com., Workmen's Compensation Appeal Board, 32 Pa. Commonwealth Ct. 405, 379 A. 2d 908 (1977). The purpose of this act is to provide financial protection to employes injured in the course of their employment by requiring the employer to compensate an injured employe regardless of fault. In enacting this legislation, the legislature recognized that the employer possessed superior bargaining power and thus included numerous provisions designed to prevent the employer from exercising this bargaining power to deprive employes of the benefits which this legislation was intended to provide. An agreement to release or limit the employer's liability made before the date of any injury is against public policy and unenforceable (77 P.S. §71); no agreement as to compensation may be made before the seventh day after the injury and the Department of Labor and Industry (department) has the duty of examining each compensation agreement to determine whether it conforms to the provisions of the act and rules and regulations promulgated thereunder (77 P.S. §731-3); an employer or insurer who improperly suspends payments is subject to a penalty that may equal 20 percent of the amount of the award (77 P.S. §774.1); the department is required to promulgate rules and regulations which are reasonably calculated to expedite the reporting and processing of injury cases, insure full payment of compensation when due, and provide employes with timely notice and information of their rights under the act and also has the power to penalize employers and insurers responsible for delays by awarding a sum equal to 20 percent of the amount awarded and interest accrued (77 P.S. §991); employers are required to

report all injuries received by employes in the course of their employment immediately to the insurer and the department (77 P.S. §994); where the employer or its insurer contests liability and the employe is awarded comspensation, the award shall include a reasonable sum for costs incurred for attorneys' fees, witnesses, necessary medical examinations and the value of unreimbursed lost time to attend the proceeding (77 P.S. §996); and employers are required to distribute to each employe at the time of hiring a brochure prepared by the Secretary of the Department setting forth the rights of an employe in the case of disability or death caused by occupational disease (77 P.S. §1404.1).

These provisions show that the legislature recognized that employers may attempt to use their superior bargaining position to prevent injured employes from receiving the benefits provided by the Workmen's Compensation Act and they express a clear legislative policy in favor of protecting employes from these efforts. To promote the public policy of this state as expressed in this legislation, the case law must recognize a claim based on a retaliatory action taken against an employe for filing a workmen's compensation claim.

The case law in other jurisdictions is divided on the question of whether retaliatory action taken against an employe for pursuing his or her remedies under the Workmen's Compensation Act gives rise to a cause of action against the former employer. The courts recognizing a claim, Kelsay v. Motorola, Inc., 74 I11. 2d 172, 384 N.E. 2d 353 (1978); Sventko v. The Kroger Co., 69 Mich. App. 644, 245 N.W. 2d 151 (1976); Brown v. Transcon Lines, 284 Or. 597, 588 P. 2d 1087 (1978); Frampton v. Central Indiana Gas Co., 260 Ind. 249, 297 N.E. 2d 425

(1973), base their decisions on the public policy as expressed in the workmen's compensation legislation of providing benefits to injured employes that would be thwarted by retaliatory discharge. The courts holding that the employe has no cause of action, Dockery v. Lampart Table Co., 36 N.C. App. 293, 244 S.E. 2d 272 (1978); Segal v. Arrow Industries Corp., 364 So. 2d 89 (Fla. 3d DCA 1978); Christy v. Petrus, 365 Mo. 1187, 295 S.W. 2d 122 (1956), on the other hand, view the issue as a matter for the legislature. According to these courts, it cannot be assumed that the omission of a remedy for a retaliatory discharge in such comprehensive legislation is an oversight and remedies for claims resulting from alleged violations of the spirit of an act are best left to the legislature.

We reject the rationale on which the case law refusing to recognize a claim for retaliatory discharge is based for two reasons. First, the argument that only the legislature may create a remedy for a wrongful discharge has been rejected by the appellate courts of this state. "Recently, . . . Pennsylvania has joined the growing number of states recognizing that when the discharge of an employee-at-will threatens public policy, the employee may have a cause of action against the employer for wrongful discharge" (footnote omitted). Yaindl v. Ingersoll-Rand Company Standard Pump-Aldrich Division, supra, at 571, 422 A. 2d at 616-7. Where a discharge violates the clear mandate of public policy, an action for wrongful discharge lies in trespass: Reuther v. Fowler & Williams, Inc., supra.

Second, we find no basis for concluding that the omission in the Workmen's Compensation Act of a remedy for retaliatory action shows a lack of intent on the part of the legislature to create a right of

recovery. As we previously stated, the Workmen's Compensation Act is a comprehensive scheme to provide benefits to injured employes. This scheme would be seriously undermined if employers may threaten to discharge employes for seeking benefits under the act because many employes would give up their workmen's compensation claims in order to avoid jeopadizing their job. This result would effectively relieve the employer of the responsibilities expressly placed upon it by the Workmen's Compensation Act. Such a result is completely contrary to the desires of the legislature reflected in the numerous provisions within the Workmen's Compensation Act designed to bar an employer from utilizing its superior bargaining position to avoid its responsibilities under the act.

For these reasons, we enter the following

### ORDER

On this February 10, 1981 it is hereby ordered that defendant's preliminary objections to count 1 of plaintiff's complaint are sustained and this count is dismissed and that defendant's preliminary objections to count 2 of this complaint are overruled.