691 A.2d 511

**David L. SHICK, Appellant,**

**v.**

**Donald L. SHIREY t/d/b/a Donald L. Shirey Lumber, Appellee.**

Superior Court of Pennsylvania.

Argued Nov. 26, 1996.

Filed March 19, 1997.

Ronald Elliott, New Bethlehem, for appellant.

H. John Drayer, Clarion, for appellee.

Before CAVANAUGH, J., CIRILLO, President Judge Emeritus, and POPOVICH, JOHNSON, HUDOCK, FORD ELLIOTT, SAYLOR, EAKIN and SCHILLER, JJ.

EAKIN, Judge:

David Shick appeals from an order of the Court of Common Pleas of Clarion County sustaining the preliminary objections of appellee Donald L. Shirey. We affirm.

In October 1991, appellee hired appellant as an employee at-will, with no written contract. While on the job on September 13, 1993, appellant injured his left knee, requiring surgery in December 1993. Appellant received workers' compensation benefits through March 1, 1994; on that date, appellant was released to return to work. Appellant, in this action, alleges he notified appellee of his availability, but was informed that he no longer had a job because of his claim under the Pennsylvania Workers' Compensation Act.[1]

In May 1994, appellant filed a complaint against appellee alleging that he had been illegally terminated due to his workers' compensation claim. Appellee filed preliminary objections in the nature of a demurrer on the ground that appellant had failed to state a cause of action. The Honorable Charles R. Alexander sustained the demurrer.

One issue is presented for our review: whether Pennsylvania recognizes a cause of action for retaliatory discharge of an at-will employee who filed a workers' compensation claim.

When reviewing an appeal from an order sustaining preliminary objections in the nature of a demurrer, all material facts set forth in the complaint as well as all inferences reasonably deducible therefrom are admitted as true for purposes of review. *Clifton v. Suburban Cable TV Co., Inc.*, 434 Pa.Super. 139, 142, 642 A.2d 512, 514 (1994) (citations omitted). "The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the demurrer." *Id.*

---

1. 77 P.S. § 1, *et seq.*, as amended July 2, 1993, P.L. 190, No. 44, § 1. The 1993 amendment changed the title of the act from "The Pennsylvania Workmen's Compensation Act" to the "Workers' Compensation Act."

■ It is well-settled that Pennsylvania recognizes the at-will employment doctrine. As a general rule, no cause of action exists for terminating an at-will employment relationship. Beginning with *Henry v. Pittsburg & Lake Erie Railroad Co.*, 139 Pa. 289, 21 A. 157 (1891) and as recently reaffirmed in *Stumpp v. Stroudsburg Municipal Authority*, 540 Pa. 391, 658 A.2d 333 (1995), the at-will doctrine provides that unless a written contract exists between the parties, an employer may terminate an employee at any time for any reason or for no reason. *See, e.g., Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974); *Krajsa v. Keypunch, Inc.*, 424 Pa.Super. 230, 622 A.2d 355 (1993) ("an at will employee may be terminated for good reason, bad reason, or no reason at all"). In *Geary*, our Supreme Court held that an at-will employee discharged in retaliation for calling to his supervisors' attention that a product his employer manufactured was dangerous and defective has no cause of action against his employer for wrongful discharge. The fact that Geary was acting in the best interests of both his employer and the general public did not establish a cause of action.

The *Geary* Court, however, noted in dicta that a cause of action might lie in limited circumstances where a termination clearly violated public policy: "where the complaint itself discloses a plausible and legitimate reason for terminating an at-will employment relationship and *no clear mandate of public polic* y *is violated thereby,* an employee at will has no right of action against his employer for wrongful discharge." *Id.* at 184, 319 A.2d at 180 (emphasis added). *See also Paul v. Lankenau Hospital*, 524 Pa. 90, 569 A.2d 346 (1990); *Clay v. Advanced Computer Applications*, 522 Pa. 86, 559 A.2d 917 (1989); *Marsh v. Boyle*, 366 Pa.Super. 1, 530 A.2d 491 (1987); *Turner v. Letterkenny Federal Credit Union*, 351 Pa.Super. 51, 505 A.2d 259 (1985). An employee must establish that there has been a "violation of a clearly mandated public policy which 'strikes at the heart of a citizen's social right, duties, and responsibilities.' " *Turner*, 351 Pa.Super. at 55, 505 A.2d at 261.

This court has recently reiterated the source of these public policy exceptions:

> the employee must point to a clear public policy articulated in the constitution, in legislation, an administrative regulation, or a judicial decision .... [citation omitted]. Furthermore, the stated mandate of public policy, as articulated in the constitution, statute, or judicial decision, must be applicable directly to the employee and the employee's actions. It is not sufficient that the employer's actions towards the employee are unfair.

*Hunger v. Grand Central Sanitation*, 447 Pa.Super. 575, 670 A.2d 173, 175 (1996) (citing *Reese v. Tom Hesser Chevrolet–BMW*, 413 Pa.Super. 168, 604 A.2d 1072 (1992) (fact that employer required employee, as condition of continued employment, to reimburse it for losses attributable to action of employee may have been unfair but did not violate law; employee failed to state public policy exception to at-will employment doctrine)); *Darlington v. General Electric*, 350 Pa.Super. 183, 504 A.2d 306 (1986) (no public policy exception to at-will employment doctrine found even though employee was discharged unfairly in that he was not afforded the opportunity to defend himself against allegations of accounting irregularities).

█ Clearly, there are only a few, narrow public policy exceptions to the at-will employment doctrine, exceptions that do not represent novel theories of public policy. *Darlington*, 350 Pa.Super. at 191, 504 A.2d at 310. Generally, these exceptions fall into three categories: an employer cannot require an employee to commit a crime, cannot prevent an employee from complying with a statutorily imposed duty, and cannot discharge an employee when specifically prohibited from doing so by statute. *See, e.g., Kroen v. Bedway Security Agency*, 430 Pa.Super. 83, 633 A.2d 628 (1993) (employee discharged for refusing to take polygraph violated 18 Pa.C.S. § 7321); *Reuther v. Fowler & Williams, Inc.*, 255 Pa.Super. 28, 386 A.2d 119 (1978) (employee discharged for performing statutorily obligated jury duty violated 42 Pa.C.S. § 4501); *Field v. Philadelphia Electric Co.*, 388 Pa.Super. 400, 565 A.2d

1170 (1989) (employee could proceed in wrongful discharge action after he was fired for reporting safety violations to Nuclear Regulatory Commission, as required by federal law).

Despite this, appellant asserts that a cause of action exists in Pennsylvania for the wrongful discharge of an employee in retaliation for filing a workers' compensation claim. Appellant's reliance on *Macken v. Lord Corp.*, 402 Pa.Super. 1, 585 A.2d 1106 (1991) for this assertion is misplaced, however. Upon finding that Macken failed at trial to prove retaliatory discharge for filing a workers' compensation claim, this court made the observation that "[a]lthough there is no Pennsylvania Supreme Court decision squarely on point, developing Pennsylvania law suggests there can now be a cause of action for discharge in retaliation for filing workers' compensation claims." *Id.* at 4, 585 A.2d at 1108. However, as the trial court pointed out, a careful reading of *Macken* shows that this employment issue was never before the court; this language is thus dicta. Moreover, the *Macken* court did not identify the "developing law," other than cite the inapposite *Rabatin v. Columbus Lines Inc.*, 790 F.2d 22 (3d Cir.1986) (injured worker brought products liability suit against manufacturer of equipment and a negligence action against the owner of the equipment he was using when he was injured).[2]

**2.** Appellant also cites *Highhouse v. Avery Transportation*, 443 Pa.Super. 120, 660 A.2d 1374 (1995) as subsequent support of *Macken.* Appellant seizes on this sentence in *Highhouse:* "the Superior Court [in *Macken* ] recognized a cause of action for discharge of an employee in retaliation for filing a worker's [sic] compensation claim." *Id.* at 126, 660 A.2d at 1377. However, this was not *Macken*'s holding, but rather dicta that such a cause of action *may* exist. *Highhouse* did not address the entirely different issue of workers' compensation and retaliatory discharge. Rather, *Highhouse* found that discharging an at will employee because he made a claim for unemployment compensation constituted a violation of public policy.

*Highhouse* found a "clear mandate of public policy" in the Unemployment Compensation Law itself, which directed that "[n]o agreement by an employee to waive, release, or commute his rights to [unemployment] compensation, or any other rights under [the Unemployment Compensation Law], shall be valid." Id. at 127, 660 A.2d at 1378 (citing Unemployment Compensation Law, 43 P.S. § 861). Highhouse argued his employer had sought such a waiver. "Where a statute of the Commonwealth expresses a public policy designed to alleviate a condition of possible distress among the public or a segment

Our colleagues on the Commonwealth Court have noted that while *Macken* suggested a cause of action "may exist, there is no Pennsylvania appellate court decision that being discharged for being on workmen's compensation is sufficient to bring a wrongful discharge claim." *Kuzel v. Krause*, 658 A.2d 856, 860 (Pa.Commw.1995). The Commonwealth Court went on to state that for the purposes of that case only, it would "without reaching the issue, assume that a wrongful discharge action can be brought for being terminated for being on workmen's compensation." *Id.*

Since neither this court nor our Supreme Court has reached this issue, we have reviewed several trial court opinions that are precisely on point. In *Butler v. Negley House, Inc.*, 20 Pa. D. & C.3d 543 (Pa.Com.Pl.1981), the trial court held that a cause of action in favor of an employee arose from an employer's refusal to rehire the employee in retaliation for his filing a workers' compensation claim. Negley House argued in preliminary objections that there was no provision within the Workers' Compensation Act that protected an employee from retaliatory action. However, the court stated that:

The purpose of [the Workers' Compensation Act] is to provide financial protection to employees injured in the course of their employment by requiring the employer to compensate an injured employee regardless of fault ... [the Act] included numerous provisions designed to prevent the

thereof and *explicitly proscribes waiver of the benefits of the act,* no private agreement, however valid between the parties, can operate as such a waiver." *Warner Co. v. Unemp. Comp. Bd. of Review,* 396 Pa. 545, 554, 153 A.2d 906, 911 (1959).

The Workers' Compensation Act contains no similar statement that could be construed as a clear mandate of public policy. As the trial court observed, our legislature has pointedly refused, despite opportunities, to include such a mandate in the workers' compensation law. Indeed, there are reasons to differentiate between the two forms of compensation; they are concepts that sound similar, but which grow from different roots. An employer, particularly a small business, faced with an employee rendered unavailable for work by injury may need to replace the worker immediately; the alternative may be to shut down, perhaps permanently. It would not be sound policy to render that employer liable to civil action simply for doing that which is necessary to stay in business. This contrasts to an unemployment claim, the genesis of which is entirely different.

employer from exercising [its superior bargaining power] to deprive employees of the benefits which this legislation was intended to provide.

*Id.* at 550. The court pointed to various provisions of the Act that, by specifically addressing the need to keep employees on a level playing field, expressed a clear legislative intent to protect employees from employers with superior bargaining power. Accordingly, "to promote the public policy of this state as expressed in this legislation, the case law must recognize a claim based on a retaliatory action taken against an employee for filing a workers' compensation claim." *Id.* at 551. The court rejected the argument that only the legislature may create a remedy for wrongful discharge, noting that Pennsylvania recognizes a cause of action for retaliatory discharge of an at-will employee when the discharge threatens public policy. *Yaindl v. Ingersoll–Rand Company,* 281 Pa.Super. 560, 571, 422 A.2d 611, 616–7 (1980).

The Allegheny County court further reasoned that the overall purpose of the Workers' Compensation Act would be "seriously undermined" if employers could threaten to discharge workers for filing claims. The employer would be relieved from the responsibility expressly placed upon it by the Act. Such a result would be "completely contrary to the desire of the legislature reflected in the numerous provisions within the Workers' Compensation Act designed to bar an employer from using its superior bargaining position." *Butler,* 20 Pa. D. & C.3d at 553.

The United States District Court for the Middle District of Pennsylvania addressed this issue and relied on *Butler* in finding a cause of action. In *Rettinger v. American Can Co.,* 574 F.Supp. 306 (M.D.Pa.1983), the court refused to dismiss Rettinger's cause of action for alleged wrongful discharge following her dismissal for filing a workers' compensation claim. American Can contended that Rettinger failed as a matter of law to state a claim upon which relief could be granted since the General Assembly failed to include in Pennsylvania's Workers' Compensation Act a remedy for wrongful discharge in retaliation for filing a claim under the Act.

The district court noted its obligation to be "sensitive to the doctrinal trends of the state whose law it applies." *Id.* at 309 (citing *Becker v. Interstate Properties,* 569 F.2d 1203, 1206 (3d Cir.1977) (footnote omitted), *cert. denied,* 436 U.S. 906, 98 S.Ct. 2237, 56 L.Ed.2d 404 (1978)). Unable to find any state appellate authority recognizing this cause of action, however, the court turned to the Allegheny County *Butler* decision. In essentially adopting *Butler,* the *Rettinger* court found "no basis for concluding that the omission in the Workmen's Compensation Act of a remedy for retaliatory discharge shows a lack of intent on the part of the legislature to create a right of recovery." *Id.* would agree with *Butler* for several reasons:

> First, even though *Geary* has been interpreted as signalling a 'narrow rather than expansive interpretation of the public policy exception,' [citation omitted], it appears to this court that *Geary* itself recognized in dicta a public policy exception for the retaliatory discharge at issue here. . . .
>
> Although *Geary* declined to define the perimeters of its public policy exception, subsequent cases have interpreted *Geary* as recognizing a cause of action for wrongful discharge only in the absence of a statutory remedy and only when important and well recognized facets of public policy were at stake.

*Rettinger,* 574 F.Supp. at 310–11.

Four years later, the Adams County Court of Common Pleas faced this issue and refused to recognize a cause of action for retaliatory discharge of an at-will employee who filed a workers' compensation claim. *Dietz v. Round Hill Foods, Inc.,* 49 Pa. D. & C.3d 222 (Pa.Com.Pl.1987). The *Dietz* court acknowledged that any analysis of this issue must "initially ascertain whether any public policy is threatened by the discharge." *Id.* at 223. The *Dietz* court distinguished *Butler:*

> [T]he [*Butler*] court did state that the failure to include a *remedy* for retaliatory discharge in the statute did not show a lack of intent on the part of the legislature to create a remedy. However, we believe that it is not the expression of a remedy which is important, but rather an *expression*

*that the discharge of an employee is to be prohibited,* which manifests the public policy for which the exception is to be applied.

*Id.* at 232 n. 10 (emphasis added).

The *Dietz* court looked to *Cisco v. United Parcel Services, Inc.,* 328 Pa.Super. 300, 476 A.2d 1340 (1984) wherein this court examined what public policy encompassed:

> The sources of public policy [which may limit an employer's right of discharge] include legislation; administrative rules, regulation, or decision; and judicial decision. In certain instances, a professional code of ethics may contain an expression of public policy.... Absent legislation, the judiciary must define the cause of action in case-by-case determinations.

*Id.* at 306–7, 476 A.2d at 1340 (citing *Pierce v. Ortho Pharmaceutical Corp.,* 84 N.J. 58, 72, 417 A.2d 505, 512 (1980)).[3] The *Dietz* court observed that the public policy exception to at-will employment applies only when a clear constitutional or statutory mandate exists and that Dietz's discharge following her workers' compensation claim did not fit the criteria for a public policy exception. *Dietz,* Pa. 49 D & C.3d at 223.

A survey of how other state courts have addressed this issue evidences no clear trend. Indiana, like Pennsylvania, follows the at-will employment doctrine. In *Frampton v. Central Indiana Gas Co.,* 260 Ind. 249, 297 N.E.2d 425 (1973), the Indiana Supreme Court reversed a trial court's dismissal of a wrongful discharge claim for retaliatory discharge on the grounds of a failure to state a claim. The Court relied on language in Indiana's Workers' Compensation Act: "No contract or agreement, written or implied, no rule, regulation or other device shall, in any manner, operate to relieve any employer in whole or in part of any obligation created by this

---

**3.** In *Cisco* this court determined that the forced resignation of an employee charged with theft and trespass, and the failure to rehire him after a jury acquitted him of the charges, did not violate public policy, despite the employee's presumption of innocence following an accusation. As we noted some years later in *Hunger,* it is not sufficient that the employer's actions toward the employee are unfair. *Hunger,* 447 Pa.Super. at 583–87, 670 A.2d at 177–78.

act." *Id.* at 252, 297 N.E.2d at 427–8 (citing 15 Ind.Ann.Stat. § 40). "We believe the threat of discharge to be a 'device' within the framework of [the statute] and hence, in clear contravention of public policy." *Id.*

In 1984, the Indiana Court of Appeals acknowledged the statutory underpinnings of *Frampton:*

[A]lthough the court in *Frampton* spoke in terms of public policy, it did so in the sense of enforcing a *specific statutory prohibition* against the use of any 'device' to relieve an employer of its obligation under the Workmen's Compensation Act. An attempt to declare any discharge unlawful where the reason for discharge is contrary to general public policy was specifically rejected [by other cases]. *Such a broad exception was left for legislative expression of what constitutes public policy or which of competing public policies should be given preference.*

*Rice v. Grant County Bd. of Comm'rs,* 472 N.E.2d 213, 215 (Ind.App.2d Dist.1984) (emphasis added).

In *Sventko v. The Kroger Co.,* 69 Mich.App. 644, 245 N.W.2d 151 (1976), the Michigan Court of Appeals held that an employer may not discharge an employee in contravention of public policy, and firing an employee for filing a workers' compensation claim violated public policy. Like Indiana, the Michigan court found language in its own workers' compensation act to support its ruling:

'The purpose of the compensation act as set forth in its title, is to promote the welfare of the people of Michigan relating to the liability of employers for injuries or death sustained by their employees. The legislative policy is to provide financial and medical benefits to the victims of work-connected injuries in efficient, dignified, and certain form.'

*Id.* at 648, 245 N.W.2d at 153 (quoting *Whetro v. Awkerman,* 383 Mich. 235, 242, 174 N.W.2d 783, 785 (1970)). The court observed that the Michigan legislature had "seen fit to make it a crime for an employer to consistently discharge employees before they qualify under [the workers' compensation] act in

order to evade the provisions of the act." *Id.* at 648–49, 245 N.W.2d at 154. The fact that retaliatory discharge in this situation was not subject to *criminal* sanction was "certainly no indication on the part of the Legislature that the latter conduct is consistent with public policy." *Id.* at 649, 245 N.W.2d at 154.

Other states, however, have reached a contrary result. The North Carolina Workmen's Compensation Act contains language similar to the Indiana statute in that it prohibits the use of any "device" which would relieve an employer of any of the obligations of the Act. However, in *Dockery v. Lampart Table Co.*, 36 N.C.App. 293, 244 S.E.2d 272 (1978), the North Carolina Court of Appeals refused to recognize a cause of action for wrongful discharge by an employee who had been released after filing for workers' compensation benefits. The *Dockery* court expressly found the reasoning of *Frampton* inapplicable. Rather, the North Carolina court opted not to engage in judicial legislation but to leave the interpretation of "devices" to its legislature:

> We think complex problems such as 'devices' to defeat provisions of an act of the legislature, are best left to the expertise and resources of that body. . . .
>
> To attempt to redress this balance by judicial action without legislative authority appears to us a doubtful policy. . . . We believe the General Assembly is well equipped to weigh the various social and economic factors presented by the plaintiff's allegations in this case and to take appropriate action promoting the public welfare.

*Id.* at 299, 244 S.E.2d at 276.[4]

Similarly, other states have refused to recognize causes of action for retaliatory discharge based on a filing for workers' compensation benefits, absent some clear language by the legislature proscribing such discharge. *See, e.g., Martin v. Tapley*, 360 So.2d 708 (Ala.1978) (Alabama Supreme Court

---

4. In response to *Dockery,* in its next session the North Carolina Legislature expressly created a private cause of action for an employee's dismissal in retaliation for claiming workers' compensation benefits. *See Buie v. Daniel International Corp.,* 56 N.C.App. 445, 289 S.E.2d 118 (1982).

refused to adopt public policy exception to the at-will employment doctrine for an employee who was fired in retaliation for seeking workers' compensation benefits. The Alabama Legislature subsequently amended the state's workers' compensation act to specifically proscribe the termination of an employee solely because he/she filed for benefits); *Segal v. Arrow Industries*, 364 So.2d 89 (Fla.Dist.Ct.App.1978) (Florida District Court of Appeals refused to follow *Frampton* and *Sventko*, and the following year the Florida Legislature created a statutory cause of action for wrongful discharge in retaliation for seeking workers' compensation benefits. *See Smith v. Piezo Technology and Professional Administrators*, 427 So.2d 182 (Fla.1983) (specific statutory provision in workers' compensation law (Fla.Stat.Ann. § 440.205) prohibited employer from discharging employee for filing workers' compensation claim)).

Indeed, while there is little consensus in this area, we nevertheless can discern a pattern: most courts recognizing a cause of action did so because they found a clear manifestation of public policy *in the statutory language* proscribing discrimination or discharge for seeking benefits. Other courts, in jurisdictions without similar supporting statutory language, adopted these decisions but failed to discuss the significance of the express statutory language in the cases they followed. Such express statutory language is not found in Pennsylvania's Workers' Compensation Act.

We agree that the exercise of judicial restraint is the better course in this situation "because of an important counterbalancing public policy that the employer be master of his business. The legislature is best equipped to balance the competing equities no matter how appealing the issue sub judice may appear." *Dietz*, 49 Pa. D. & C.3d at 240. We are therefore disposed to follow the reasoning of those courts that have rejected the judicial creation of a cause of action absent an express retaliatory prohibition and, instead, have looked to their legislatures to provide the solution.

Indeed, this court has long recognized that judicial modification of the at-will employment relationship is ill-advised: "Re-

straint should be observed to minimize the adverse effects that any complete abrogation might have on employment, productive efficiency, and overburdening of the judicial process with additional cases." *Darlington v. General Electric,* 350 Pa.Super. 183, 191, 504 A.2d 306, 310 (1986) (the "judicial process may be an inappropriate forum for such sweeping policy change"); *see also Lankenau,* 524 Pa. at 94, 569 A.2d at 348 (*Geary* Court said "no" to question of whether time had come to impose judicial restraints on an employer's power of discharge).[5]

As the trial court noted, our legislature declined an opportunity to address the discharge of an at-will employee in retaliation for claiming workers' compensation.[6] The trial court further noted that the entire Workers' Compensation Act was overhauled in 1993, but no remedy for dismissal was enacted. We will not engage in the kind of judicial activism appellant requests, given the clear judicial expressions advising the contrary. *See Geary, supra; Lankenau, supra; Darlington, supra.*

We do not condone employment practices which penalize a person for exercising rights provided for by statute; the Workers' Compensation Act exists to benefit both employee and employer and should not be abused by either. However, we hold there is no precedent or statutory language to find that terminating an employee who has filed for workers' compensation benefits states a cause of action for retaliatory discharge.

**5.** The Mississippi Supreme Court also realized this when it refused to recognize a cause of action for retaliatory discharge:

> In modern times, the rend to turn to the judicial department for a solution to all of the real or imagined ills of our society has increased sometime to the point of requesting the courts usurp the legislative power of the legislative department. This, we must resist by exercise of judicial self-restraint and limit our role to the judicial power granted by the judicial department under our constitution.

*Kelly v. Mississippi Valley Gas Co.,* 397 So.2d 874 (Miss.1981).

**6.** H.R. 1742, introduced in the 1981 session, was entitled the "Unjust Dismissal Act," provided procedures to protect employees for unjust dismissals, and specified remedies for an unjust discharge. The bill died in committee.

For the foregoing reasons, we affirm the order of the trial court.

Order affirmed.

SAYLOR, J., files a dissenting opinion joined by FORD ELLIOTT and SCHILLER, JJ.

SCHILLER, J., also files a dissenting statement.

SAYLOR, J., dissenting:

As the majority notes, an employee cannot succeed on a public-policy-based wrongful discharge claim unless he or she can establish "a violation of a clearly mandated public policy which 'strikes at the heart of a citizen's social right, duties, and responsibilities.'" *Turner v. Letterkenny Federal Credit Union*, 351 Pa.Super. 51, 55, 505 A.2d 259, 261 (1985), quoting *Novosel v. Nationwide Insurance Company*, 721 F.2d 894, 899 (3d Cir.1983). Such a public policy is, in my view, inherent in the Pennsylvania Workers' Compensation Act. Therefore, I respectfully dissent.

The General Assembly's purpose in enacting the Workers' Compensation Act was to address "the evil ... [of] uncompensated work-related injuries...." *Keller v. Old Lycoming Township*, 286 Pa.Super. 339, 350, 428 A.2d 1358, 1363–64 (1981). The legislative scheme by which this purpose was accomplished has been described as a "fair exchange[,]" *Rudy v. McCloskey & Co.*, 348 Pa. 401, 35 A.2d 250, 253 (1944), a "*quid pro quo* [,]" *Poyser v. Newman & Co., Inc.*, 514 Pa. 32, 36, 522 A.2d 548, 550 (1987), a "compromise ... between employees and employers[,]" *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Company)*, 516 Pa. 240, 247, 532 A.2d 374, 377 (1987), and as the embodiment of a "bargain theory[,]" Torrey & Greenberg, *Pennsylvania Workers' Compensation: Law and Practice* 1–7 (1996).

The Act assures employees that if they sustain medical bills and/or lost wages as the result of work-related injuries, they will be compensated promptly, without regard to fault and without the necessity of litigation. Torrey & Greenberg,

*supra; American Association of Meat Processors v. Casualty Reciprocal Exchange,* 527 Pa. 59, 588 A.2d 491 (1991); *Keller, supra.* To insure the payment of such compensation, the Act requires every employer to carry the necessary insurance and makes the failure to do so a criminal offense. 77 P.S. § 501; Torrey & Greenberg, *supra.* In addition, the Act effectively forbids employers from requiring employees to waive, prior to injury, their right to receive workers' compensation in the event of such injury; any such agreement or release is invalid and against public policy. 77 P.S. § 71; Torrey & Greenberg, *supra.*

The corresponding benefit to employers is, of course, contained in the exclusivity provision of the Act: "[t]he liability of an employer under this act shall be exclusive and in place of any and all other liability to such employes...." 77 P.S. § 481(a). In other words, the Act provides the employee's exclusive remedy for work-related injuries. *Poyser, supra.* It deprives the employee of "any recourse against the employer in tort for negligence." *LeFlar v. Gulf Creek Industrial Park No. 2,* 511 Pa. 574, 581, 515 A.2d 875, 879 (1986), quoting *Tsarnas v. Jones & Laughlin Steel Corporation,* 488 Pa. 513, 519, 412 A.2d 1094, 1097 (1980). It is "a complete substitute for, not a supplement to, common law tort actions." *Hefferin v. Stempkowski,* 247 Pa.Super. 366, 369, 372 A.2d 869, 871 (1977), *appeal denied.*

Thus, "[t]he workmen's compensation law has deprived some of rights in exchange for surer benefits, immunized some, to make possible resources to benefit many...." *Kline v. Arden H. Verner Company,* 503 Pa. 251, 255, 469 A.2d 158, 160 (1983). As our Supreme Court has observed,

> employees receiv[e] immediate set benefits as opposed to the potentially greater benefits which could result from a successful tort action; and employers [are] protected from exorbitant unexpected costs which could result from employee lawsuits.

*Kachinski,* 516 Pa. at 247, 532 A.2d at 377.

Despite the comprehensive system of rights and immunities which the legislature has incorporated into the Workers' Com-

pensation Act, the majority concludes that since the Act contains no express language "proscribing discrimination or discharge for seeking benefits[,]" there exists no clear public policy against such retaliatory discharge. I believe that such public policy inheres in the "bargain" embodied in the Act. As the Supreme Court of Indiana has said of its state's Workmen's Compensation Act,

> [t]he Act creates a *duty* in the employer to compensate employees for work-related injuries (through insurance) and a *right* in the employee to receive such compensation. But in order for the goals of the Act to be realized and for public policy to be effectuated, the employee must be able to exercise his right in an unfettered fashion without being subject to reprisal. If employers are permitted to penalize employees for filing workmen's compensation claims, a most important public policy will be undermined. The fear of being discharged would have a deleterious effect on the exercise of a statutory right. Employees will not file claims for justly deserved compensation—opting, instead, to continue their employment without incident. The end result, of course, is that the employer is effectively relieved of his obligation.

*Frampton v. Central Indiana Gas Company*, 260 Ind. 249, , 297 N.E.2d 425, 427 (1973) (emphasis supplied in original). Although the Indiana Act contains a prohibition against the use of any "device" that would relieve an employer of his statutory obligation, I believe that the *Frampton* analysis is applicable to any statute, including our own, which recognizes both an employee's right to be compensated for work-related injuries and an employer's immunity to actions in tort for such injuries. If employers may discharge employees in retaliation for their exercise of the rights granted them by the Workers' Compensation Act, employees will be forced to choose between seeking compensation for their injuries and preserving their employment. This, in my judgment, would destroy the balance struck by the legislature and contravene the public policy of this Commonwealth.

Accordingly, I would reverse the decision of the trial court and allow plaintiff's claim to proceed.

SCHILLER, J., dissenting:

I join in the Dissenting Opinion of Judge Saylor. However, I wish to emphasize that there is no greater indication of public policy than the enactment of a constitutional provision, and in this Commonwealth the authority for the workers compensation system is derived from such a provision. *See* Pennsylvania Constitution Art. 3 § 18. The punishment of employees for the exercise of this legislatively created and constitutionally authorized right should not be condoned.