642 A.2d 512

Zebbie J. CLIFTON, Janos M. Toth, III

v.

SUBURBAN CABLE TV COMPANY,
INC., and Daniel McMonigle.

**Appeal of Zebbie J. CLIFTON.**

Superior Court of Pennsylvania.

Submitted Aug. 23, 1993.

Filed May 24, 1994.

Petition for Allowance of Appeal Denied Oct. 7, 1994.

Zebbie J. Clifton, appellant, pro se.

Kenneth A. Roos, Blue Bell, for appellees.

Before CIRILLO, DEL SOLE and JOHNSON, JJ.

CIRILLO, Judge.

This is an appeal from an order entered in the Court of Common Pleas of Montgomery County sustaining the preliminary objections of appellee Suburban Cable Television Company, Inc. (Suburban) in the nature of a demurrer and dismissing the complaint of appellant Zebbie J. Clifton (Clifton). We affirm.

Clifton is a prisoner incarcerated at the Graterford Correctional Institution (the Prison) in Graterford, Pennsylvania. In June, 1992, the Commonwealth and Perkiomen Home–Vue, Inc. (Perkiomen) entered into a contract which provided that Perkiomen would install and maintain cable television service to 1,942 individual prison cells in the Prison. The original term of the contract was 15 years, to continue thereafter on a year-to-year basis.

For administrative convenience, the contract required the Commonwealth to collect payments from or on behalf of the inmates and then remit these payments to Perkiomen on a monthly basis. Perkiomen assumed responsibility for maintaining and keeping in good repair the cable equipment necessary for good and safe reception from each outlet. The inmates were responsible for the cable equipment installed and placed in their cells. In fact, the inmates were required to sign a responsibility retainer in which they agreed to pay up to $50.00 if the cable converter was damaged or destroyed. Finally, the contract provided that upon one year's written notice to the Commonwealth, Perkiomen could renegotiate its cable rates, subject to the Commonwealth's written acceptance. In 1986, Perkiomen sold all franchise and company rights to Suburban.

In December, 1987, Clifton signed a responsibility retainer in order to receive cable television services in his cell. Suburban sent a notice to the Commonwealth that a $1.00 price increase would be placed on all cable service, effective March 1, 1989. The notice was not given to the Commonwealth within the requisite time period stated in the contract. Clifton, therefore, filed a complaint with the Prison, objecting to the rate increase. The record is not clear regarding the outcome of Clifton's initial complaint.

In November, 1989, Suburban sent a second notice to the Commonwealth informing it that basic service would be discontinued at its regular price as of January 1, 1990, and that, instead, a contracted package would be offered at a slightly higher price. Again, Clifton filed a complaint with the Prison. On January 1, 1990, Suburban, as promised, eliminated its

142

basic package and replaced it with a higher priced combination package.

Clifton filed a complaint against Suburban in the Court of Common Pleas of Montgomery County claiming that Suburban breached its contract with the Commonwealth (the Prison) in that Suburban was bound to provide cable services to the Prison at a set price. Clifton sought a preliminary injunction, as well as compensatory and punitive damages. In response to Clifton's complaint, Suburban filed preliminary objections in the nature of a demurrer. Following a hearing, the Honorable Albert R. Subers denied Clifton's motion for injunctive relief. Thereafter, the Honorable Bernard· A. Moore sustained Suburban's preliminary objections and dismissed Clifton's complaint. This appeal followed.

On appeal, Clifton presents one issue for our review: Whether the trial court erred in granting Suburban's preliminary objections in the nature of a demurrer and holding that Clifton, as a prisoner and a subscriber of cable services, has no standing or remedy at law as a third-party beneficiary to the contract between Suburban and the Commonwealth?

In an appeal from an order sustaining preliminary objections in the nature of a demurrer, this court applies the same standard employed by the trial court: all material facts set forth in the complaint as well as all inferences reasonably deducible therefrom are admitted as true for the purposes of review. *Kyle v. McNamara & Criste*, 506 Pa. 631, 634, 487 A.2d 814, 815 (1985); *Baker v. Magnetic Analysis Corp.*, 347 Pa.Super. 188, 192, 500 A.2d 470, 472 (1985). The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the demurrer. *Kyle, supra; Baker, supra.*

Although the contract between the Commonwealth and Perkiomen/Suburban may have been consummated with the intent to benefit the inmates at the Graterford Correctional

Institute (e.g., to provide cable television services to the inmates), the nature of this contract and the public policy of this Commonwealth preclude a finding that the inmates have standing to sue under the contract as third-party beneficiaries.

In *Guy v. Liederbach*, 501 Pa. 47, 459 A.2d 744 (1983), the Pennsylvania Supreme Court adopted the Restatement (Second) of Contracts § 302 (1979) as the law of this Commonwealth concerning third-party beneficiary rights. Section 302 states:

Intended and Incidental Beneficiaries

(1) Unless otherwise agreed ... a beneficiary of a promise is an intended beneficiary **if recognition of a right to performance in the beneficiary is *appropriate* to effectuate the intention of the parties** and either

(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or

(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

(2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

Restatement (Second) of Contracts § 302 (1979) (emphasis added); *see also Scarpitti v. Weborg*, 530 Pa. 366, 609 A.2d 147 (1992); *Strutz v. State Farm Mut. Ins. Co.*, 415 Pa.Super. 371, 609 A.2d 569 (1992).

█ Pursuant to Section 302, two requirements must be met in order to assert a claim under a contract as an intended third-party beneficiary. The first prong of the test sets forth a standing requirement which empowers the trial court to determine, in its discretion, whether third-party beneficiary status is appropriate in a particular case. Restatement (Second) of Contracts § 302(1) (1979); *Scarpitti*, 530 Pa. at 371, 609 A.2d at 150. The second prong requires satisfaction of either subsection (a) or (b). Subsections (a) and (b) of section (1) define the two types of claimants who may be intended as third-party beneficiaries under any given contract. Restate-

ment (Second) of Contracts § 302(1)(a), (b) (1979); *Scarpitti*, 530 Pa. at 371, 609 A.2d at 150.

Here, Judge Moore exercised his discretion and found it to be inappropriate to confer third-party beneficiary status to prison inmates under these circumstances. Specifically, Judge Moore held that "state prison[ers] do not have standing to enforce contracts entered into by the Commonwealth." *Scarpitti, supra.* Judge Moore, therefore, was not required to analyze the second prong of the Restatement test.

Government contracts, such as the one in this case, pose unique difficulties in the area of third-party beneficiary rights because, to some extent, every member of the public is directly or indirectly intended to benefit from such a contract. The Commonwealth/Bureau of Corrections enters into contracts for food, services, equipment, clothing, etc., to regulate and maintain its correctional facilities. The public at large benefits from these government contracts to the extent that they assure that those who ought to be incarcerated will be incarcerated, and that those who are already incarcerated will pay their debts to society. To grant all members of the public, including those incarcerated, standing to enforce such government contracts, however, would be contrary to the public policy of this Commonwealth. Consequently, the courts of this Commonwealth must take a more narrow view of third-party beneficiary status in this context and apply a more stringent test to determine whether a third party qualifies for beneficiary status.

The Restatement (Second) of Contracts § 313 speaks to government contracts. In pertinent part, Section 313 provides:

(1) The rules stated in this Chapter apply to contracts with a government or governmental agency *except to the extent that application would contravene the policy of the law authorizing the contract or prescribing remedies for its breach.*

Restatement (Second) of Contracts § 313(1) (1979) (emphasis added). *See Nguyen v. United States Catholic Conference,*

548 F.Supp. 1333 (W.D.Pa.1982); *Flamini v. General Acc. Fire & Life Assur.*, 328 Pa.Super. 406, 477 A.2d 508 (1984). Comment a to Section 313 articulates a few circumstances in which it is not advisable to confer third-party beneficiary status under government contracts:

> Among factors which may make inappropriate a direct action against the promisor are arrangements for governmental control over the litigation and settlement of claims, *the likelihood of impairment of service or of excessive financial burden,* and the availability of alternatives such as insurance.

Restatement (Second) of Contracts § 313 cmt. a (1979) (emphasis added).

With these standards in mind, we agree with Judge Moore and find it wholly inappropriate to permit the inmates at Graterford to attempt to enforce the contract for cable television services entered into by the Commonwealth and Suburban. Allowing such intervention may hamper the flow of these and other services, and may drive up the costs of regulating and maintaining the prisons of this Commonwealth.

Notwithstanding the above-mentioned considerations, third-party beneficiary status is inappropriate in this case because the language of the contract demonstrates that the Commonwealth did not intend to confer standing upon the inmates to sue under the contract. First, the opening paragraph of the agreement names Perkiomen/Suburban and the Commonwealth as the parties to the agreement. No prisoner is named as a party to this contract. Second, and more important, the contract states that only the Commonwealth and Suburban may enforce the terms of the agreement. Specifically, the contract provides that Suburban may renegotiate its rates upon one year's written notice *to the Commonwealth* and upon *the Commonwealth's* written approval. Under the express terms of the contract, therefore, the prisoners have no standing to challenge either the negotiation of rates or the unilateral changes thereof. Why the Commonwealth did not challenge or question the apparently unauthorized rate increases is beyond the purview of this appeal.

Accordingly, we affirm the trial court's order sustaining preliminary objections in the nature of a demurrer and dismissing the complaint.

Order affirmed.

DEL SOLE, J., files a dissenting opinion.

DEL SOLE, Judge, dissenting.

Appellant is a prisoner incarcerated at the Graterford Correctional Institution in Graterford, Pennsylvania. In June of 1982, the Commonwealth and Perkiomen Home–Vue, Inc. contracted for Perkiomen to install, maintain and sell cable television service to the prison. This agreement contained a list of the buildings to be wired for service which included all 1,942 cells at the prison.

Inmates were to subscribe to the service and were responsible for payment of the monthly charge. No change of the amount of the charge was permitted unless the company notified the Commonwealth one year in advance of its request to renegotiate the rate with the Commonwealth. Appellant is an inmate and subscriber to the service. Suburban Cable Television Company, Inc. is the successor to Perkiomen, and Daniel M. McMonigle is its manager. On November 10, 1989 the company gave notice to the users that a new price was effective on January 1, 1990. There was no prior notice to the Commonwealth nor did it agree to the increase.

Appellant filed suit seeking an injunction and declaratory relief to prevent the increase. The trial court sustained Appellees' Preliminary Objections finding that Appellant was not entitled to enforce the terms of the agreement between the Commonwealth and the Defendants. The Majority affirms; however, since I view the underlying agreement created benefits for persons situated as is Appellant, I must dissent.

The question simply put is—does the contract with the Commonwealth create a class of persons who are intended beneficiaries that can seek its enforcement? The Majority correctly states that the law in this area was substantially

changed by the Supreme Court in *Guy v. Liederbach,* 501 Pa. 47, 459 A.2d 744 (1983) when Restatement (Second) of Contracts § 302 was adopted. Previously, to be a third party beneficiary of a contract, both parties to the contract must have expressed the intention in the agreement that the promisor's obligation was to that third party.

Given this change, the Supreme Court went further and in *Scarpitti v. Weborg,* 530 Pa. 366, 609 A.2d 147, 150 (1992) permitted the plaintiffs to enforce an agreement as "intended third party beneficiaries of the implied contract." In so doing the court stated:

> Accordingly, we hold that a party becomes a third party beneficiary only where both parties to the contract express an intention to benefit the third party in the contract itself, *Spires* [*v. Hanover Fire Ins. Co.*], *supra* [364 Pa. 52, 70 A.2d 828], *unless,* the circumstances are so compelling that recognition of the beneficiary's right is appropriate to effectuate the intention of the parties, and the performance satisfies an obligation of the promisee to pay money to the beneficiary or the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance. *Guy* [*v. Liederbach*], *supra* [501 Pa. 47, 459 A.2d 744].

Applying that standard we can readily conclude that Appellant was not expressly mentioned in the contract. Nor does the performance of the agreement by the Appellees satisfy an obligation owed Appellants by the Commonwealth. However, I conclude that the circumstances lead to the conclusion that the promisee, (Commonwealth) intended to give the benefit of the promised performance, renegotiated rate increases, to the inmates.

We must keep in mind that Appellant entered into a separate contract for the cable service under the terms of the master agreement. The terms of that agreement were binding on the inmates and dictated how they would pay for their service and their responsibility for the equipment. The contract manifests an intention or the part of Appellee and the

Commonwealth that it is the inmates who are intended to benefit from the installation of the cable service. Appellant, although not specifically mentioned by name, certainly falls within the class of persons who are intended to benefit from the contract, and who, by subscribing for the service, became a part of that class.

Nor do I agree that this is the type of government contract that precludes third party enforcement. Here the class of persons sought to be affected was determined by those persons contracting with the promisor, a contemplated event which was sought by the promisor. This is not a contract that provides in general for the public good, and therefore not subject to individual enforcement, or one that provides for a purely public purpose, such as road maintenance. Therefore, I dissent.