Brady, Patrick F., J.
In this case the plaintiff, a prisoner doing two life sentences in MCI-Norfolk, seeks declaratoiy and injunctive relief concerning dental care available to him in prison. Specifically, he complains of the failure of the Department of Correction (DOC) and its health services vendor, University of Massachusetts Correctional Health Program (UMCH),[1] to provide him adequate and timely teeth cleaning and scaling, and a root canal on a tooth that ultimately was extracted. He seeks relief on two independent legal theories. First, he argues that the DOC, under its written policy concerning medical services (10 DOC 630.01; Exhibit 2) is obliged to furnish him with dental treatment “comparable in quality to that available in the community,” and that it failed to do so with respect to cleaning and scaling of his teeth, and in failing to provide him with a root canal. Second, he argues that DOC and UMCH failed to provide those services with respect to cleaning/scaling and end-odontics as required under their contract, to which he is a third-party beneficiary. The plaintiff does not seek relief under the Eighth Amendment to the U.S. Constitution, and does not seek money damages.
I heard evidence on the case from November 14, 2011 through November 21, 2011. On the credible evidence, I now find and rule as follows.
1. The DOC articulates its health services policy in a series of guidelines (10 DOC 600 et seq.) which deal with particular health areas, including dental. The general medical policy is expressed in 10 DOC 630. Its “Treatment Philosophy” is expressed in 10 DOC 630.01:
Each facility shall provide access to medical, dental, and mental health services needed to maintain the basic health of inmates.
1. Access to health care is an inmate’s right and not a privilege.
2 All Healthcare services shall be provided in an atmosphere that assures privacy and dignity for both the inmate and the provider.
3. All health care services shall be comparable in quality to that available in the community.
More particularized guidelines regarding dental services are expressed in 103 DOC 640.
2. The DOC attempts to comply with its obligation to provide health services to inmates by contracting with an outside vendor. Since January 1, 2003 the vendor has been University of Massachusetts Correctional Health Program (UMCH), a program of the University of Massachusetts medical school. The contracts at issue consist of several documents, including a request for response (RFR, Exhibit 4) and various dental protocols drafted by UMCH and agreed to by the DOC.
3. The RFR (Ex. 4, §2.1) defines the general obligation of the contractor “to provide inmates with humane health care in accordance with Community Standards throughout the term of the contract.” “Community Standard” is defined in the RFR as follows:
It is intended that “community standard” for medical, dental and mental health services describe the scope and quality of those services, including diagnostic testing, preventive services and after care considered appropriate, in terms of type, amount, frequency, level, setting and duration appropriate to the patient’s diagnosis or condition. The care must be consistent with generally accepted practice parameters in the Commonwealth of Massachusetts as recognized by health care providers in the same or similar general specialty as typically treat or manage the diagnosis or condition, help restore or maintain the patient’s health, prevent the deterioration or palliate the patient’s condition, prevent *250 the reasonably likely onset of a health problem, or detect an incipient problem. It is also intended that where applicable, “community standard” recognizes the unique nature of health care delivery to an inmate population in the prison system. Accordingly, health care services should be “evidence based” (i.e. founded upon published literature that demonstrates efficacy of services provided in a prison system), and should incorporate “best practices” utilized by health care professionals in prison systems.
Dental Protocols are prepared by the contractor (UMCH) and approved by the DOC. The parties have introduced dental protocols from 2002 to the present (see Exhibits 6, 7, 37, 43 and 64).
4. Dental prophylaxis and dental periodontal scaling protocols are defined in policy 36.07D (Exhibit 6). Dental prophylaxis is defined to include “the removal of plaque and acquired stains followed by a polishing of the teeth.” Periodontal scaling is defined to include removal of supra- and subgingival calculus with appropriate instrumentation. A dental prophylaxis may or may not follow this procedure. As to when these procedures are to be performed, the protocol recites as follows:
Dental periodontal scaling may be performed at the discretion of the attending dentist. Priority will be determined by evaluating the following symptoms of periodontal disease:
a. Excessive bleeding on probing
b. Presence of periodontal pockets
c. Presence of supra and subgingival calculus
d. Hyper mobility
e. Vertical and/or horizontal bone loss by x-ray
f. Furcation involvement
5. With the exception of 2003, the policy has been essentially identical from 2002 to the present with respect to prophylaxis and periodontal scaling. In 2003, these services were provided but there was no comparable provision as recited above in paragraph 4. In 2008, the words “at the discretion of the attending dentist” were added.
6. The plaintiff was convicted of two counts of murder in New Hampshire, and has been incarcerated since 1986. In about 1993 he was transferred, pursuant to the terms of an interstate compact, to Massachusetts where he has served his time ever since. In August 1998 he was sent to MCI-Norfolk. He has remained there to the present. While at prior institutions in New Hampshire, Maine and Massachusetts, he periodically received teeth cleanings and scalings.
7. Plaintiffs dental care history is extensive (Exhibit 1). From the time that he arrived at Norfolk in 1998 to February 2005, he never received a teeth cleaning or scaling, despite repeated requests and grievances. His dental health deteriorated. He was diagnosed with moderate periodontitis on October 7, 1998 and December 29, 1999 (Exhibit 1). On examination on December 29, 1999, the DOC dentist noted “heavy plaque,” and severe gingival inflammation. Plaintiff persistently requested, in writing, that his teeth be cleaned. He was told, at various times, that he did not need a cleaning, or that it would do no good because he had poor dental hygiene, or that teeth cleaning was low on the priority list. In April 2002 the DOC actually approved one of plaintiffs grievances that his teeth had not been cleaned for several years, and informed him that a dental cleaning “will be scheduled as time an (sic) availability permits." (Exhibits 21,22.) No such appointment was ever scheduled and plaintiffs teeth remained uncleaned and unsealed.
The plaintiff continued to press the issue with letters, grievances, and ultimately this lawsuit filed in 2004. On one occasion, by letter of August 2, 2004 (Exhibit 42), Dr. Arthur Brewer, the program medical director, informed him that “cleaning and scaling is not a service provided.” That statement was incorrect. (See Exhibit 43, July 2004 protocols.)
On September 1-3, 2004 a DOC dentist noted that a tooth (#4) might have to be extracted if they could not do a root canal. The DOC denied plaintiffs request for a root canal on March 29, 2005 (Exhibit 55). Eventually the plaintiff had tooth #4 extracted. At that time the dental protocol in effect permitted root canals under certain circumstances but only on “permanent anterior . . . teeth . . . i.e., cental incisors, lateral incisors, and canines.” (Exhibit 43, p. 13.) Tooth #4, a posterior bicuspid, did not fall into that categoiy.
On February 4, 2005 Dr. Oh performed a scaling (Exhibit 1). This was the first such treatment the plaintiff had received since August 1997. Also at this visit Dr. Oh noted eight teeth with cavities. The dental department followed up and repaired six of the eight cavities over the next 2 1/2 years.
On December 4, 2008, in connection with this lawsuit, Dr. David Russell, an outside dentist, examined the plaintiff at Norfolk. He observed “advanced carious lesions” (decay) on teeth numbers 12 and 30; chronic periodontitis, and bleeding of the gums on probing. Of the symptoms identified in the dental protocol (36.07D, Exhibit 6) concerning “dental prophylaxis and dental periodontal scaling,” Dr. Russell credibly identified four as warranting periodontal scalings: (a) excessive bleeding on probing, (b) presence of periodontal pockets, (c) presence of supra- and subgingival calculus, and (d) vertical and/or horizontal bone loss by x-ray.
No doubt prompted by this lawsuit, the plaintiff received a cleaning and scaling in 2009. The parties agree that since 2009 the plaintiff has received semiannual cleanings and scalings.
DISCUSSION
The case raises several issues.
First, what are the “community standards” with respect to periodic cleanings and scalings, and provid *251 ing root canals; and has the defendants’ treatment of plaintiff met those standards? As to cleanings and scaling in the non-prison community, patients are encouraged to return on a semi-annual basis. Each of the four dentists called as expert witnesses by the parties call their patients in on a semi-annual basis, in accordance with the American Dental Association recommendations, for cleanings and scalings. There is no serious dispute that removal of calculus (also known as tartar) which builds upon the surface of the teeth is necessary for good dental health. The failure to do so will result in periodontal disease and tooth loss. Although good oral hygiene practices (brushing, flossing) can help avoid tartar build up, professional cleaning/scaling is periodically necessary.[2]
To be sure, each person is different with respect to the rapidity in which calculus may build up. Some people may not need to have a professional cleaning/scaling more often than once a year. Some with a history of periodontal disease may need to have more frequent cleanings and scalings. But no matter how good a person’s personal oral hygiene may be, he or she cannot remove tartar buildup without scaling provided by a dental hygienist or dentist.
There is no scientific basis to conclude that, in general, cleanings/scalings need to be done at any particular interval. The six months simply seems to be a consensus of the dental community consisting of average qualified practitioners. In part, it may be motivated by the fact that insurance usually pays for it on that frequency.
The DOC policy, as reflected in the protocols (36.07D) concerning prophylaxis and scaling, does not depart from generally accepted community standards. The policy does not provide for cleanings/scalings at particular intervals, but leaves it to the discretion of the attending dentist based on symptoms. Since “community standard” must be interpreted in light of the prison setting, recalling every prisoner for dental cleaning/scaling every six months, whether he/she needs or not, is not necessary or feasible, given the economic facts of life (scarce resources) and the fact that prisoners are often transferred from one facility to another in the DOC.
This case, however, is not about the general prison population but about the plaintiff. It could not be clearer that his dental care at MCI-Norfolk, at least until the last few years, was inadequate. He repeatedly requested cleaning/scaling and was denied it. He was told he would be scheduled for a cleaning/scaling, but that was not done. He was told repeatedly that they did not do cleanings and scalings at Norfolk. The program medical director, Dr. Brewer, wrote him that cleanings and scalings was not a service provided, which was incorrect.
Leaving the treatment to the discretion of the attending dentist based on symptoms is not improper, inadequate, or below community standards. But the discretion must be exercised. The defendants here consistently, until February 2005, denied plaintiff a cleaning/scaling when his dental condition clearly indicated that it was required. The evidence with respect to this plaintiff reflects an obvious failure of the defendants to exercise the discretion provided by their protocols.[3]
A root canal is a much more involved procedure. In the non-prison community, it is far more expensive than a simple cleaning or scaling (e.g., $1,000 vs. $85-$95). A crown may be and often is necessary. The policy at the time that plaintiffs tooth #4 was extracted limited the provision of root canals to permanent anterior teeth and did not cover tooth #4. By January 2006, the policy was changed to preclude root canals under any circumstances.
Extraction rather than root canal for a dead or diseased tooth is treatment consistent with community standards. Root canal vs. extraction is a matter of choice. It may be that many people in the non-prison community who can afford a root canal, or have insurance which would cover it, would opt for a root canal over an extraction, but that is not the test. In a world of limited resources, “community standards” cannot be interpreted to require the DOC to provide prisoners with a treatment of their choice.
Second, the DOC argues that its medical/dental policy as reflected in 10 DOC 600 et seq., and particularly 10 DOC 630.01, may not be the subject of a declaratory judgment action. The reason proffered by the DOC is that the provisions in question are guidelines, not regulations promulgated under the State Administrative Procedures Act, and therefore not subject to a declaratory judgment.
That argument is foreclosed by the Appeals Court Rule 1:28 opinion in this case. The Appeals Court, upon a review of a grant of summary judgment to the defendants, discussed the propriety of declaratory relief in this case, and concluded that the plaintiff could seek it here based on his contention that the DOC was noncompliant with “a community standard of health care that is consistent with the DOC 600 Health Care policies.” The Appeals Court did not distinguish between a regulation promulgated according to the State Administrative Procedures Act (G.L.c. 30A) and an internal guideline adopted by the DOC such as the health care guidelines here. Although perhaps the parties’ briefs did not focus the Appeals Court on this precise issue, it is not within the province of this court to conclude that the Appeals Court was incorrect in determining that the “claim was appropriately brought under the Declaratory Judgment Act, G.L.c. 231 A, §2.” In any event, the law seems clear that agencies of the government must abide by their own internal procedures or guidelines regardless of whether they are formally adopted regulations. Commissioner of Revenue v. BayBank Middlesex, 421 Mass. 736, 739 (1996); see Commonwealth v. Bright, *252 2008 WL 5780815 (Ma. Superior Court 2008) [25 Mass. L. Rptr. 233] (Sheriff violated policy concerning monitoring of prisoner telephone calls).
Third, both defendants argue that the plaintiff does not have standing to bring this declaratory judgment action because he is not a third-party beneficiary of the contract between the defendants (Exhibit 2). The Appeals Court decision noted that this “determination requires specific findings regarding whether the parties to the contract intended that Sullivan receive the benefit of the contract.”
It is evident from footnote 7 of the Appeals Court decision that the parties did not provide the Appeals Court with the contract. The contract provides, in paragraph 17.10 of RFR, “Third Party Beneficiaries,” that “[n]othing contained in this Contract is intended or shall be construed to evidence an intention to confer any rights or remedies upon any person other than the parties hereto and their respective agents and representatives.” This provision is clear on its face: the parties did not “intend” prisoners to have third-party beneficiary status. Thus, one must regard them as incidental beneficiaries only.
The plaintiff has cited several cases where similar “no third-party beneficiary” clauses have been limited, but none involve governmental entities. The defendants have brought to my attention several persuasive cases in the correctional setting, including one Massachusetts Superior Court case (Cruz v. Spencer, 2008 WL 650657, at *2), which reject third-party beneficiary status for inmates. E.g., Gartin v. Corrections Corp. of America, 2009 WL2486133, 2 (D.Alaska 2009), finding a similar clause as in the instant contract precluded third-party beneficiary status for inmates. See also Palmer v. Fiume, 2009 WL246 1075, 8 (N.J.Super.A.D. 2009); Clifton v. Suburban TV Co., Inc., 434 Pa.Super. 139, 144-45, 642 A.2d 512, 515 (1994).
However, the lack of third-party beneficiary status does not preclude the relief which plaintiff seeks here. The policy of the DOC, as expressed in its internal guideline, 10 DOC 630.01, is to provide dental care “comparable in quality to that available in the community.” As indicated, the plaintiff can sue for a declaratory judgment to interpret and enforce that policy. It is appropriate as an interpretative tool to look at the contract, and especially the RFR, including the definition of “community standards" in the RFR, to determine the meaning of the DOC policy. In other words, to determine what the DOC policy means, the Court may look to what it required from potential bidders on the contract. That in essence is what I have attempted to do in this case.
To sum up. Although on its face the DOC policy with respect to dental cleaning and scaling which essentially leaves it to the discretion of the attending dentist depending on listed symptoms meets community standards, the DOC failed to exercise that discretion as to the plaintiff. His symptoms required semi-annual cleanings and scalings. Given the DOC’s record with respect to the plaintiff, he is entitled to declaratoiy and injunctive relief on that issue.
The DOC policy with respect to root canals does not depart from community standards. Extraction is acceptable treatment within community standards. By extracting plaintiffs posterior bicuspid tooth no. 4, instead of a root canal, the DOC did not depart from community standards.
By express intent of the parties, the plaintiff is not a third-party beneficiary of the contract between the DOC and UMCH. He does not have standing to sue on a breach of contract theory. However, he does have standing to seek and obtain declaratory and injunctive relief concerning 130 DOC 630.01.
ORDER
A declaratory judgment shall enter in accordance with the rulings made in this Memorandum of Decision.

UMCH was substituted as a party defendant on the morning of trial by agreement of the parties for Arthur Brewer, M.D., program director.

“Polishing” is not necessary. Scaling by means of a cavitron machine is adequate.

Although this is not a class action, it should be noted that the data introduced indicates that UMCH provides prophylaxis infrequently to prisoners. In 2010, for instance, less than 4% of inmates received dental prophylaxis. (See Exhibits 66 and 67.)